**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armon Marshani Walker, | No. CV-21-01870-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Armon Marshani Walker's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14), and Plaintiff's Reply Brief (Doc. 15). The Court has reviewed the briefs, Administrative Record (Doc. 10, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 40-56) and affirms the ALJ's decision for the reasons addressed herein.

## I.     BACKGROUND

Plaintiff protectively filed an application for DIB on February 14, 2020, for a period of disability beginning on May 29, 2016. (R. at 40). Plaintiff's claims were denied initially on April 10, 2020, and upon reconsideration on June 22, 2020. (*Id*.) Plaintiff testified before an ALJ in a telephonic hearing regarding his claims on January 28, 2021. (*Id*.) The ALJ

denied his claims on March 8, 2021. (R. at 40-56). On September 1, 2021, the Appeals Council denied his request for review of the ALJ's decision. (R. at 1-5). On November 4, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of degenerative disc disease of the lumbar spine with spondylosis, asthma, obesity, post-traumatic stress disorder with dissociative symptoms with delayed expression, anxiety disorder, persistent depressive disorder, major depressive disorder, and alcohol-related disorder. (R. at 43).

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 56). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 43). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b)" with certain function limitations and concluded that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 45, 55).

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of

1  supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more

2  than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

3  conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4  (citations omitted).

5      To determine whether a claimant is disabled for purposes of the Act, the ALJ

6  follows a five–step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof

7  on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v.

8  Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether

9  the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(b).

10  If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines

11  whether the claimant has a "severe" medically determinable physical or mental

12  impairment. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled, and the inquiry

13  ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or

14  combination of impairments meets or medically equals an impairment listed in Appendix

15  1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 416.920(d). If so, the claimant is

16  automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step

17  four, the ALJ assesses the claimant's RFC and determines whether the claimant is still

18  capable of performing past relevant work. 20 C.F.R. § 416.920(e). If so, the claimant is not

19  disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where

20  she determines whether the claimant can perform any other work in the national economy

21  based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g).

22  If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

23  **III.   ANALYSIS**

24      Plaintiff raises four arguments for the Court's consideration: (1) whether the ALJ

25  erred in assessing Plaintiff's ability to sustain work given the medical opinions regarding

26  his mental and physical functioning; (2) did the ALJ fail to fully develop the record by not

27  issuing a subpoena for additional records; (3) whether the ALJ properly considered the

28  assessments of state agency medical findings when deciding Plaintiff's RFC, and (4) the

ALJ erroneously rejected Plaintiff's symptom testimony. (Doc. 13 at 1). Plaintiff also requests this Court to remand the case for an award of benefits. (*Id*. at 23).

### A. The ALJ properly assessed Plaintiff's ability to sustain work.

The ALJ assessed Plaintiff's impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, and she determined that Plaintiff had a moderate limitation with regards to his concentration, persistence and maintaining pace. (R. at 44). Plaintiff argues that the RFC as written in the decision fails to accommodate for this limitation because the ALJ assigned an RFC limitation of "simple, routine tasks" which does not adequately account for the moderate limitation, and the limitation would not allow Plaintiff to sustain any activity on a regular basis. (Doc. 13 at 16).

The ALJ must "assess the nature and extent of a [claimant's] mental limitations and restrictions" in formulating the RFC. 20 C.F.R. § 404.1545(c). However, the RFC need not contain a verbatim recitation of all limitations if the RFC otherwise incorporates them. *Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008). The Ninth Circuit has previously found that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Merrill-Russell v. Comm'r of Soc. Sec. Admn*., 411 F. Supp. 3d 503, 509 (D. Ariz. 2019) (citing *Stubbs-Danielson*, 539 F.3d at 1174). "[T]he relevant inquiry is whether the medical evidence supports the ALJ's finding." *Id*. (citing *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1126 (N.D. Cal. 2016)).

In the present case, the ALJ sufficiently accounted for Plaintiff's moderate limitations in concentration, persistence and maintaining pace with an RFC determination of "simple, routine tasks." *See Merrill-Russell*, 411 F. Supp. at 510 (holding an RFC determination of "simple, routine work" sufficiently accounted for moderate limitations in concentration, persistence, and pace.). Multiple examinations with Dr. Barouta-Kharzo documented Plaintiff was fully oriented, thought content was normal, insight and judgment were fair. (R. at 48-49, 551, 568-69, 600). State agency psychological consultative examiners, Dr. General and Dr. Huddleston, noted Plaintiff had good and sustained

concentration and persistence during exams. (R. at 47, 50, 303, 311). "The Court acknowledges that maintaining good concentration throughout a medical examination does not necessarily equate to good concentration and pace at a sustained level. However, the Court will not read in the opposite—and more illogical—conclusion that good concentration during a short examination translates to an *inability* to concentrate at a sustained level." *Merrill-Russell*, 411 F. Supp. at 510.

Plaintiff additionally argues that the ALJ failed to incorporate RFC limitations to account for attendance and punctuality issues. (Doc. 13 at 16). However, as set out in 20 C.F.R. part 404, Subpart P, Appendix 1, 12.00E(3), paragraph B3 defines what "concentrate, persist, or maintain pace" entails. The definition encompasses "sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id*. Because the Court has found that the inclusion of "simple, routine work" accounts for limitations with concentration, persistence, and pace, it logically follows that "simple, routine work" incorporates Plaintiff's attendance and punctuality issues since that is part of the overall definition for concentration, persistence, and pace. A separate RFC finding by the ALJ was unnecessary. The Court finds the ALJ's conclusion was supported by substantial evidence and therefore finds no error in the particular construction of Plaintiff's RFC.

**B.  The ALJ was not required to issue a subpoena for additional records.**

Plaintiff argues that the ALJ did not fully develop the record because she failed to subpoena Plaintiff's examination records from the Veteran's Administration (VA) which had previously assigned Plaintiff a 70% disability rating for his PTSD. (Doc. 13 at 17).

Plaintiff submitted correspondence to the ALJ prior to his hearing, as required by 20 C.F.R. § 404.935, informing her that medical records were expected to be submitted from the VA on behalf of Plaintiff, but he had not yet received them from the VA. (R. at 271). At the time of the hearing, Plaintiff's counsel notified the ALJ that they still had not received the requested records and informed her they were records concerning compensation and pension exams with regards to his PTSD, along with documentation of

his eligibility and disability benefits with the VA. (R. at 65). The ALJ stated, "I'll give you 14 days. If you need longer, just let me know." (*Id.*) The ALJ then stated at the conclusion of the hearing, "We are waiting on some VA records. As soon as they come in I am going to look at this and get a decision out to you." (R. at 92). Fourteen days after the hearing, Plaintiff's counsel sent correspondence to the ALJ that they had not received the VA records and requested the ALJ issue a subpoena to obtain the records. (R. at 282). It does not appear that a subpoena was issued and the ALJ released her decision on March 8, 2021. (R. at 56).

According to 20 C.F.R. § 404.950(d)(1), a subpoena may be issued "[w]hen it is reasonably necessary for the full presentation of a case" and for "documents that are material to an issue at the hearing." Parties that desire a subpoena must file a written request with the ALJ at least ten business days before the hearing date unless there are extenuating circumstances. *See* 20 C.F.R. § 404.950(d)(2). Some of the factors that must be included in the written request are to "state the important facts that the witness or document is expected to prove[,] and indicate why these facts could not be proven without issuing a subpoena." *Id.*

The Court finds there was no error committed by the ALJ in not issuing a subpoena. The regulations show that Plaintiff's subpoena request was untimely as it was not requested ten business days prior to the hearing date. Plaintiff made the request fourteen days *after* the hearing was held. Plaintiff did not claim the presence of any extenuating circumstances that caused a delayed request. However, should Plaintiff have shown that circumstances beyond his control prevented a timely request, he failed to state the facts the documents were expected to prove and to explain why the facts could not be proven without the subpoena.

Moreover, the ALJ specifically stated in her decision that she did not provide articulation about submitted evidentiary exhibits of the Plaintiff's rated disabilities from the VA "or elsewhere that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c)." (R. at 53, 280, 394-95). For claims filed on or after March 27,

2017, 20 C.F.R. § 404.1520b(c) provides the criteria for evidence that is considered neither valuable nor persuasive and states that no analysis will be provided on how such evidence was considered in the decision. The regulation says that decisions by other governmental agencies fall under this condition, which includes the VA. *See also* 20 C.F.R. § 404.1504. However, it is apparent from the record that some evidence from the VA was part of the exhibits pending before the ALJ prior to her final decision. This includes a summary of VA benefits Plaintiff received along with his disability rating. (R. at 280-81). Nonetheless, as the regulations point out, the VA's decision is not binding on the ALJ, nor does the ALJ consider it valuable or persuasive. Further, the full VA record was not material to any issues at the hearing and was not necessary for a full presentation of the case since the ALJ had the benefit of numerous medical records and consultations for review regarding Plaintiff's PTSD. A subpoena was not necessary to further develop the record.

### C. The ALJ did not err in rejecting Plaintiff's symptom and pain testimony.

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony. (Doc. 13 at 20-23.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are

insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's impairments encompassing degenerative disc disease of the lumbar spine with spondylosis, asthma, obesity, post-traumatic stress disorder with dissociative symptoms with delayed expression, anxiety disorder, persistent depressive disorder, major depressive disorder, and alcohol-related disorder. (R. at 46). Plaintiff asserted that he has chronic back pain that is not constant but flares up and causes his back to go out at times. (46, 78). Plaintiff testified his back goes out once a month and can last up to one and a half weeks and during this time he cannot walk or do anything and requires assistance from his wife to shower or use the restroom. (46, 80, 84). Plaintiff testified that he has asthma, and it is aggravated by moving around and he experiences shortness of breath when walking. (46, 85). Plaintiff further testified that he is irritable and has difficulty getting along with others. (46, 78).

The ALJ considered the level of Plaintiff's medical issues and found that his "impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record…" (R. at 46). The ALJ then cited to specific examples in the record to support her findings. Plaintiff, however, argues that the ALJ failed to provide specific, clear, and convincing reasons to reject Plaintiff's symptom testimony, and that a Plaintiff does not need to provide evidence of the severity of those symptoms. (Doc. 13 at 1, 21-22). The Court does not agree with Plaintiff's arguments. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount his testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

Plaintiff's brief argument centers around his back pain and PTSD and the Court will consider that medical evidence in its analysis of the ALJ's decision. The ALJ's decision begins with discussion of Plaintiff's x-ray on January 19, 2016, which showed a slight progression of mild L4-L5 degenerative disc disease. (R. at 46, 387-88). On August 3, 2016, Plaintiff saw Dr. Banerjee and he reported that it hurt to move and was depressed due to his back pain. (R. at 46, 640-46). Plaintiff weighed 331 pounds and did not appear to be in acute distress during examination, was alert, comfortable and pleasant, and the examination was normal in its findings. (R. at 46, 643). Dr. Banerjee advised Plaintiff to lose weight to control his pain, was referred to a nutritionist and was prescribed medication for his low back pain. (R. at 46, 644). Plaintiff had a telephonic appointment with Dr. Banerjee on September 21, 2016, and reported that he stopped taking the medication when his back was feeling better, and he was going to the gym for "slow exercise." (R. at 46, 634). On October 8, 2016, Plaintiff was seen at the ER for lower back pain. (R. at 47). Plaintiff claimed his back "gave out" earlier that day while he was jogging. (R. at 621). Plaintiff's examination was normal with no acute distress, although he showed pain and tenderness of the lower mid lumbar back. (R. at 622). A CT scan showed lumbar spondylosis and degenerative disc disease causing mild to severe narrowing, but no acute issues. (R. at 47, 621-23, 742-43). Plaintiff was prescribed medication, rest and moist heat. (R. at 47, 623). On December 16, 2016, it was recommended that Plaintiff participate in physical therapy consisting of one visit a week for eight weeks. (R. at 48, 583-85). On February 2, 2017, Plaintiff was discharged from physical therapy after having met two of

his four long-term goals. (R. at 48, 573). However, Plaintiff claimed his lower back felt the same and he continued to have pain associated with activities that required standing like chores, walking or exercise, and his pain level was 1/10 up to 8-9/10 depending on the activity. (R. at 48, 572). Plaintiff was advised to consider an orthopedic referral and continue with weight loss and exercise. (R. at 48, 573).

A consultative examination on July 30, 2018, was conducted with Dr. Gordon and records showed that Plaintiff weighed 333 pounds, was in no acute distress, gait was normal and demonstrated appropriate balance while walking. (R. at 50, 313-18). Plaintiff exhibited 5/5 strength in all extremities and range of motion was normal. There was no pain with straight leg-lifts, but Plaintiff complained of tenderness of the lumbar spine over L2-L5. Although Dr. Gordon found no limitations for Plaintiff, the ALJ explained that she did not find the doctor's medical opinion persuasive because the CT scan from 2016 indicated issues with his spine. (R. at 50).

On October 28, 2019, x-rays of Plaintiff's spine showed degenerative changes and no acute osseous abnormality. (R. at 50, 448). On February 23, 2020, Plaintiff visited the ER with complaints of back pain. (R. at 50). He claimed that he twisted the wrong way while getting a drink of water. Plaintiff was in no acute distress upon examination and there was no midline tenderness, but there appeared to be tenderness of the left SI joint. Plaintiff indicated that he was not taking medications for his back, and he was given a prescription and released. (R. at 51, 330-33). On February 28, 2020, Plaintiff attended a follow-up appointment regarding his back pain and the examination found he was in no acute distress, gait was normal, normal strength and range of motion in all extremities, but there was some tenderness in his back. (R. at 51, 760-64). Plaintiff was prescribed Lidocaine patches and menthol cream "as needed" for back pain. A February 28, 2020, x-ray of Plaintiff's lumbar spine showed moderate degenerative disc disease at L4-L5, similar to the study done on January 19, 2016, indicating no significant worsening of his condition. (R. at 51, 765).

With regards to Plaintiff's PTSD claims the ALJ also cited to many specific findings in her decision. On October 21, 2016, Plaintiff reported during an examination that he was

feeling depressed, irritable and anxious for a few months. The doctor diagnosed mood disorder and prescribed medication "as needed." (R. at 47, 607-10). On October 26, 2016, Plaintiff attended a psychological consultative examination with Dr. General. Plaintiff stated he was unable to hold a job due to his lower back pain and PTSD. Examination notes show that Plaintiff was cooperative, polite, exhibited good hygiene and grooming, his responses were quick, fluent, relevant and in complete sentences, was alert, oriented and his mood was dysthymic and slightly anergic. (R. at 47, 294-303). He scored 28/30 points on a mini mental status examination and his IQ was estimated to be in the average range. (R. at 47, 301). The ALJ found Dr. General's opinion persuasive. (R. at 48).

On November 18, 2016, Plaintiff met with Dr. Barouta-Kharzo and told her that he was diagnosed with PTSD. (R. at 48, 592). Plaintiff stated that he was short with people and not comfortable around them and was depressed. (R. at 592-93). Plaintiff reported that he stopped taking his prescribed medication because "it did not make him feel anything." (R. at 593). The examination showed Plaintiff had good hygiene and grooming, appropriate and cooperative behavior, good eye contact, fully oriented, slow responses to questions, and mildly tired, anxious, and depressed. (R. at 48, 600). He exhibited circumstantial thought processes, fair insight and judgment, and his thought content was normal. (*Id.*) The doctor prescribed medication for mood, anxiety, sleep, and attention. (R. at 48, 591-603). Plaintiff was also referred for psychotherapy. (*Id.*) On December 15, 2016, Plaintiff reported that he sometimes forgot to take his medications, but slept well when he took them, stated he had low concentration, and his memory was "not good." (R. at 587). The examination showed Plaintiff was well groomed and had good hygiene, behavior was cooperative and appropriate with fair eye contact, fully oriented, but was slow to respond to questions. (R. at 588). His mood was mildly tired, anxious, and depressed, exhibited circumstantial thought process, normal thought content, and fair judgment and insight. (R. at 48, 587-91). The doctor ordered Plaintiff a medication organizer to aid with medication compliance. Plaintiff again met with Dr. Barouta-Kharzo on February 17, March 16, and April 27, 2017, with virtually the same findings and observations by the doctor at all three

appointments. Plaintiff explained at his February visit that his wife was sick, and he was taking care of her and had missed some appointments and was out of medication. (R. at 49, 566-71). In March Plaintiff expressed his mood as okay, but the doctor increased his medication and again encouraged psychotherapy. (R. at 49, 561-66). Plaintiff asserted at his April examination that his mood was okay; his anxiety was low, and he was not easily irritated. (R. at 549-53). The ALJ found that Plaintiff's April 2017 visit was the last time Plaintiff met with Dr. Barouta-Kharzo, and the record does not indicate that Plaintiff sought treatment for mental health issues after this date. (R. at 49).

On July 18, 2018, Plaintiff attended a psychological consultative examination. Plaintiff was not taking any medication at that time and was not participating in any treatment for mental health issues. (R. at 49). The examination record indicates that Plaintiff was friendly, cooperative, presented good hygiene and grooming; however, the examining physician believed that Plaintiff was not putting forth a strong effort level during his exam. Plaintiff would respond, "I don't know" to many questions by the doctor, but when encouraged to answer, he would. Plaintiff also did not put forth much effort on the mini mental exam and achieved a score of 16/30, which if accurate, would be in the impaired range despite the doctor finding his intellectual levels appeared average. (R. at 49, 304-11).

Based upon the findings referenced above, the ALJ found that the objective medical evidence, the Plaintiff's course of treatment, and clinical examinations were not consistent with allegations of disabling impairments or pain. (R. at 51). The Court agrees with the ALJ's findings. There does not appear to be a significant change in Plaintiff's lumbar spine CT scans between 2016 and 2020, and most of his physical examinations were unremarkable. The record shows Plaintiff did experience tenderness in his lower back, but as the ALJ noted, nothing in the record seems to support Plaintiff's allegations that his back went out once a month and was incapacitated for up to a week and a half during each occurrence. (R. at 51). The ALJ also found that Plaintiff's mental health providers did not document any abnormal findings and he was never hospitalized. (R. at 52). Plaintiff did

not receive frequent outpatient mental health treatment and did not seek professional help after April 2017. (*Id.*) As Plaintiff argued, he did not need to provide evidence of the severity of those symptoms, but the ALJ is also not required to believe every allegation of disabling pain. The ALJ further illustrated that Plaintiff's treatments have been relatively routine. (R. at 51.)  This was also a proper consideration by the ALJ. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony).

However, the ALJ identified and considered all of Plaintiff's ailments and specified a series of postural and environmental restrictions within a job setting applicable to Plaintiff when the ALJ made her findings of Plaintiff's RFC. The ALJ ultimately found that while Plaintiff could not return to his past relevant work, there were other jobs available that could comply with Plaintiff's needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied her discussion of the medical evidence regarding Plaintiff's issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

In consideration of Plaintiff's daily living activities, the ALJ noted an extensive list of activities from the record that showed Plaintiff was more active than purported. Plaintiff had an emergency room visit in October 2016 for lower back pain, and he stated he had been jogging the prior day. (R. at 52, 630, 632). Although Plaintiff claimed that he is irritable around people and doesn't get along with them, he stated at a December 2016 mental health exam that he went to a friend's gathering the prior week and "got drunk." (R. at 588). In February 2017, he told a doctor his wife was sick, and he was taking care of

her. (R. at 52, 567). In July 2017, Plaintiff visited an emergency room in Louisville, Kentucky, for lower back pain after driving there from Arizona and lifting personal items. (R. at 52, 538). He stated that he was not taking his medication because he was out of medicine. (*Id.*) Yet, he also claimed during his hearing that he stopped driving a long time ago, but then stated that he avoids driving and if he does, it's just to the grocery store two to three miles away. (R. at 68).

In October 2017, Plaintiff called the VA medical center to ask if he could be tested for Zika because he had just returned to Arizona after traveling to Puerto Rico to "extract" his father-in-law after a hurricane and his wife was pregnant. (R. at 52, 511-12). In July 2018, Plaintiff denied his impairments had any impact on his daily living activities and reported he could attend to his hygiene, complete light housework, and cook meals. (R. at 314). In May 2019, Plaintiff told his dentist he could not stay for long because he came with his baby. (R. at 52, 486). In June 2019, Plaintiff again visited the emergency room while in Louisville, Kentucky, visiting family and stated he was from out-of-state and forgot his inhaler. (R. at 52, 453, 475-76, 760). In October 2019, Plaintiff had an emergency room visit for back pain because he stated that he was lifting a 175-pound heat press and was twisting to get it through the door when he developed back pain. (R. at 52, 447). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Thus, the ALJ's finding that Plaintiff was not as limited as he alleged was reasonable.

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the relatively routine course of treatments for Plaintiff's impairments, and Plaintiff's daily activities to discount his symptom testimony. There is sufficient evidence present to enable the Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more

than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ provided specific, clear and convincing reasons to dismiss Plaintiff's symptom testimony and those reasons were supported by substantial evidence.

### D.  The ALJ properly considered the state agency medical opinion evidence.

Plaintiff argues that the ALJ erred when she failed to provide specific and legitimate reasons to reject a condition of the state agency doctors' limitation opinions that she found persuasive overall. (Doc. 13 at 18-19). Plaintiff believes the ALJ should have adopted the limitation that Plaintiff could only perform one to two step tasks instead of limiting Plaintiff to simple, routine tasks which the ALJ applied instead. (*Id.* at 19.) The Court does not agree with Plaintiff's arguments, and Plaintiff's legal standard is misplaced.[1]

Plaintiff applied for disability benefits after March 27, 2017, and is subject to the new set of regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c.[2]

---

[1] Plaintiff's opening brief was filed April 21, 2022, one day before the *Woods v. Kijakazi* case was released.

[2] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment

The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b).

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792.

Plaintiff fails to articulate which particular state agency psychological opinions he takes issue with other than to argue that the ALJ should have adopted the limitation opined by the medical professionals that Plaintiff could only perform one to two step tasks since the ALJ found their reasoning persuasive. (Doc. 13 at 19). Given this description and the record citations Plaintiff referenced in his brief, it would appear the Plaintiff is indicating the opinions of Dr. Garland and Dr. Gross. (*Id.*, R. at 107, 126).

As discussed above, the legal standard of 'specific and legitimate' reasons required by an ALJ to reject a medical opinion have been replaced by the substantial evidence standard. Applying this standard to the present case, the Court finds that the ALJ's decision was based upon substantial evidence. The ALJ discussed the persuasiveness of each

relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

provider and found both Dr. Garland and Dr. Gross to be persuasive. (R. at 53). The ALJ further analyzed that their opinions were supported by the mental status examinations discussed in the record, and the ALJ found the opinions to be consistent with the limited course of treatment Plaintiff underwent for his mental health. (*Id*.) Further, the regulations specifically state that, "it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record… We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 416.920c(b)(1). The regulations illustrate that an ALJ does not need to convey their consideration behind every limitation finding in a medical opinion. Moreover, the ALJ expressly stated that regarding both Dr. Garland's and Dr. Gross's opinions, she "reworded their findings for preciseness and conciseness." (R. at 53). It therefore follows that the ALJ's finding that Plaintiff "could understand, remember, and carry out simple, routine tasks" was a reasonable means of incorporating the suggested limitation of "understanding, carrying out, [and] remembering 1 to 2 step instructions" as opined by both medical providers. (R. at 45, 107, 126).

However, Plaintiff continues his argument by suggesting that the occupations of "marker" and "routing clerk" the ALJ determined Plaintiff could perform would be eliminated because those occupations are GED Reasoning Level 2 jobs according to the *Dictionary of Occupational Titles* (DOT). (Doc. 13 at 19). Plaintiff believes that because the ALJ limited Plaintiff to simple, routine jobs, he should have been allocated occupations at the Level 1 category. (*Id*.) The Court finds that while Plaintiff is correct in his argument, this does not change the ALJ's non-disability determination.

During Plaintiff's hearing, a VE testified that there were three representative occupations the Plaintiff could perform given his age, education, work experience, and RFC. Those occupations were determined to be—cleaner housekeeper with 221,199 jobs nationally, marker with 129,365 jobs nationally, and routing clerk with 104,810 jobs nationally. (R. at 55). Plaintiff is correct that the occupations of marker and routing clerk

require a Level 2 reasoning level and according to the RFC assigned to Plaintiff, the VE should have discussed only Level 1 occupations. However, Plaintiff has failed to consider the third occupation of cleaner housekeeper in his analysis which is a Level 1 reasoning level. Not only is the cleaner housekeeper a Level 1 occupation and meets Plaintiff's RFC limitations, but it also has 221,199 jobs available nationally which more than crosses the threshold of the minimum requirement for a sufficient number of jobs available in the national economy. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014) ("25,000 jobs meet the statutory standard.").[3] The Court therefore finds that the ALJ's reliance on the marker and routing clerk occupations is harmless error because the remaining occupation of cleaner housekeeper has a sufficient number of jobs available in the national economy for Plaintiff to perform within his RFC determination, and it is not of consequence to the overall determination of disability. *See Molina v. Astrue*, 674 F.3d at 1115 (defining harmless error as an error that does not affect the ALJ's nondisability determination).

## IV.   CONCLUSION

The Court finds that substantial evidence supports the Commissioner's nondisability determination. Plaintiff's symptom testimony was appropriately discounted by specific, clear, and convincing reasons supported by substantial evidence, and the medical opinion evidence was properly considered. No legal errors were committed in Plaintiff's RFC finding or at step five of the nondisability determination. Additionally, a subpoena was not required to further develop the record. Therefore, the Court finds that substantial evidence exists to support the Commissioner's nondisability determination. The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

---

[3] Should Plaintiff attempt to argue that one occupation is not a significant range of work, the Ninth Circuit has recognized that the requirement of more than two occupations to show a significant range of work only applies to individuals of advanced age that are fifty-five or older. *See Segobia v. Kijakazi*, No. 20-55943, 2021 WL 4317349, at *2, n.1 (9th Cir. September 23, 2021). In the present case, Plaintiff was 40 at the time of the ALJ decision.

**AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 14th day of March, 2023.

Douglas L. Rayes
United States District Judge